MARVIN C. THOMPSON
    Petitioner
)
V )    REF:CIVIL ACTION NO.3:07cv915-**ID**
)

2008 APR -9 A 9:15

UNITED STATES OF AMERICA    )
    Respondents    DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

<u>NOTICE</u>
APPEAL FROM THE ORDER ON MOTION FOR HEARING
ON MERITS OF NEW EVIDENCE
ACTUAL INNOCENCE


**NOW COMES PETITIONER;**

Without counsel pursuant to **FR - Civil Procedure RULE(3)(a)(3)** and **RULE (4)** petitioner states that this court does have jurisdiction to hear this matter and a judicial duty to pursuant to **Rule (4)(3)(A)I-III.Petitioner asserts that the facts herein styled as exhibit (1) the order of the <u>State Court</u> by and through its prosecutor clearly confirms the actual innocence claims of petitioner.Petitioners opening statements of facts supporting claims and the first amendment petition to redress grievance by judicial review alone warranted at least the district courts review and a ruling,and equally so did the motion for hearing on new evidence.**The newly discovered evidence clearly and convincingly viewed in light of the evidence as a whole is sufficient to establish that no **Reasonable** factfinder would have found petitioner in violation of his supervised release.see U.S.v Trammel 107 F3d 23(11th Cir 1997) also U.S. Davis 329 F3d 1250(11th cir 2003).The lower court has an obligation to set aside regular methods of review when presented with evidence that a **Manifest Injustice has occurred,**and the cause for the proceedings by which its fradulent testimony and erroneous petition allegation were based is

sufficient to suppor not just a hearing,but the correct method for such a miscarriage of justice warrants **Immediate Release** as petitioner has demanded in his §2255 Motion being presently held without review or evidentiary hearing date,and petitioners petition to expand the §2255 Motion including his request for sentence reduction for **Retroactive Application through 1B1.10 for crack cocaine offenses.** In conclusion Petitioner does additional request that this appellate court rule Pursuant to **Rule (9)(b)(c) Release after judgement of conviction,and any other applicable method by which the appellate court can cure and resolve this injustice.** petitioner has been continously held unlawfully the entire past (24) months and deserves release and definately a hearing afterwards to determine any other issues.petitioner moves this court for an immediate order compelling the district court to vacate ~~this~~ revocation and cease and desist the continued denial of petitioners liberty.petitioners original supervised release ended in December 2006,he has lost his job family ties and liberty,he deserves swift and direct review of his unlawful revocation and asks this most Honorable court to act on his behalf and if nescessary to appoint independent cousel outside of the federal defender program to assist not represent in his complaint.


Petitioner does hereby declare under penalty of perjury that the foregoing is true and correct to the best of his knowledge and belief.

4th April 2008       Marvin C. Thompson
                     Marvin C.Thompson

CERTIFICATE OF SERVICE

I_____do hereby certify that a copy of this appeal was sent to the UNITED STATES DISTRICT COURT and the U.S. ATTORNRYS OFFICE, U.S.Poatal Mail First Class.

Done this _4th_ day of _March_ 2008        _[signature]_
                                           Marvin C. Thompson

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MARVIN C. THOMPSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v ) | Civil Action No. 3:07cv915-ID |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER ON MOTION**

Upon consideration of the motion for a hearing filed by Petitioner on March 31, 2008 (Doc. 23), and for good cause, it is

ORDERED that this motion be and is hereby DENIED.

Done this 31st day of March, 2008.

　　　　　　　　　　　　　　/s/Terry F. Moorer
　　　　　　　　　　　　　　TERRY F. MOORER
　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

*Sent To 11th Cir Court of Appeals*

Marvin C. Thompson
Yazoo Federal Correctional INST
P.O. BOX 50001BL
Yazoo, City MS 39194

## NOTICE OF ACTION

Notice:

Is being sent to this most Honorable Court recognizing that the record does reflect the courts decision affirming the Appeal submitted by Attorney;Donnie Bethel,counsel of record.The ineffective Representation by Counsel served to further Aggrieve,injure and deny due process.The motion herein reflects the damages done to me and confirms the actual innocence asserted through out the revocation proceedings and appeal.This motion was given to Yazoo FCC-Low, Staff on Monday March 10,2008 but what ever the reason the motion had not made it to the U.S.District Court In Montgomery AL,as of today.I have prepared an additional copy and sent it to them certified return reciept,along with an additional copy to the U.S.Attorneys Office;and also now to this Honorable Court. Hopefully this will result in the Lower Courts Decision to immediately vacate the conviction and sentence without further suffering being imposed by other delays.The Courts Over seeing of this Matter would be deeply appreciated.

Done this 17th day of March 2008

I AM. *Marvin C. Thompson*
Aggrieved Person

11-8-06

Article #1

## Wood hearing Thursday

**By PATRICK SANDS**
VT-N Staff Writer 11-8-06

LANETT — There will be a hearing at Lanett City Hall Thursday at 6 p.m. to determine whether to uphold the recommended termination of police officer Steven Wood and to discuss economic incentives for a call center expected to bring around 50 jobs to Lanett.

City policy states that an employee should be first recommended for termination by the department head. In the case of Wood that would be Police Chief Ron Docimo. The next step is for it to be presented to the city manager, in this case Joel Holley, who would then need to recommend the termination to the council. The council would then have a meeting with the employee and if the employee did not agree with the

•See WOOD, page 13

This is the first Article about the Hearing at Lanett city Hall.

11-28-04
mail 11-29-04

11-8-06

# WOOD
## Continued from page 1

decision of the council, they could request a full hearing with an audience present. According to reports, Wood waived his right to the first meeting with the council in order to go straight to the hearing.

Usually in matters such as this, there would be six votes with the five councilmen and mayor all voting. In this instance, there will only be five votes as Councilman Mike Yarbrough is expected to abstain.

Wood arrested Yarbrough on Sept. 30 on the charge of posting advertising material on a utility pole for allegedly having Alabama and Auburn signs displayed on the pole at the front yard of his home.

In the report on file at the Lanett Police Department, it stated that Yarbrough had been drinking at the time of his arrest. Yarbrough has vehemently denied the drinking allegation.

On Oct. 2, Yarbrough told The VT-N that he was upset about the accusation and that it was "absolutely absurd." His account was backed up by former Lanett Councilman Carl Bullard, who says he was with Yarbrough before and after the arrest that evening.

Some citizens have noted that they believe Yarbrough was singled out and pointed out a number of similar signs on utility poles around the city. Yarbrough has stated that the signs have been up for years.

The ordinance which resulted in Yarbrough's arrest states:

It shall be unlawful for any person to attach any poster, placard, advertising sign, political poster or any other type of sign to any telephone pole, electric power pole or any other utility pole in the city. This section shall not prevent or be deemed to exclude any authorized police officer of the city from attaching traffic-control signs to such poles when authorized by the police committee of the city council.

Yarbrough, who represents District 5 on the council and serves as chairman of the council's Police Committee, recently told The VT-N that he had asked the Federal Bureau of Investigation (FBI) to come in and check on a few things in the (Lanett) Police Department.

He also told The VT-N that along with his case, he has asked that the FBI look into other matters at the police department as well.

For anyone planning to attend Thursday's hearing, the council can decide to make it closed if they feel the "good name and character" of someone could be brought up. In a similar hearing several months ago, the council voted to close the meeting.

In the other agenda item for Thursday's hearing, the council will be discussing a joint action with the Chambers County Commission and Industrial Development Authority on incentives for the call center which has committed to locating in Lanett. This portion of the hearing could end up being closed as well.

Exhibit B(1)

# Council votes to terminate Lanett officer

11-10-06

By PATRICK SANDS
VT-N Staff Writer

LANETT — Following a lengthy closed hearing involving the job status of Lt. Steven Wood, the Lanett City Council voted 3-2 to to uphold the recommendation of the city manager that he be terminated.

Councilmen Tony Malone and Kyle McCoy both voted against terminating Wood while Mayor Oscar Crawley and Councilmen Jamie Heard and John Duskin voted to uphold the termination.

Usually in matters such as this, there would have been six votes with the five councilmen and mayor all voting. In this instance, there was five votes as Councilman Mike Yarbrough abstained because he had filed the complaint against Wood following his Sept. 30 arrest for posting advertising material on a utility pole — he allegedly had Alabama and Auburn signs posted on the utility pole in this front yard.

On Friday morning, Yarbrough told The VT-N that he did not put the signs up to start with and no one had ever asked him if he ever did or did not.

"You can't get anyone to enforce these code ordinances on Monday through Friday from 8 a.m. until 5 p.m., but then you get someone coming to your house at 9:30 p.m. on a Saturday," Yarbough said. "You can ride around the city now and see fresh signs that have been put up or old cars sitting out that we can't get moved because no one will enforce the ordinances."

"This has been a very embarrassing situation for me, my family and the city," Yarbrough said. "It was never about anything but retaliation. It was never about the signs, it was about me being a council member and being critical about some things that have been going on for years."

Yarbrough represents District 6 on the city council and is the current chairman of

•See OFFICER, page 7A



## OFFICER
Continued from page 1A

the council's Police Committee.

He noted that he filed his complaint just as any other citizen would do.

"This is about being critical and holding officers responsible and accountable for their actions," Yarbrough said. "I don't wish bad on anyone but sometimes people bring things on themselves."

Yarbrough said that it is important that the community become involved when they see something that is wrong.

"The city belongs to the community and the community should be much more outgoing and outspoken for what is going on and hold people accountable," he said. "When people are treated wrong, they need to file a complaint and stand up for themselves."

Yarbrough also had a message for McCoy and Malone, the two dissenters on the issue.

"I hope that Tony Malone and Kyle McCoy have a bright future for being the men that they are."

Following Thursday night's meeting, it was reported by witnesses outside the council chambers that Yarbrough voiced his displeasure with both McCoy and Malone for voting against the termination.

In a release to The VT-N, Malone defended his vote against terminating Wood.

"I in no way support the way my fellow council member's situation came about, but think it is important to tell the citizens, especially the black citizens, the reason I voted against the recommendation of the police chief and city manager to terminate Lt. Wood," Malone said. "I think the situation should have been handled differently, not because it is involving a public official, but for the fact that other means should have been rendered. The decision the officer made was not a good decision, but I must look at what policy did the officer violate. Keep in mind, the officer's action weren't good but it is done to blacks and poor whites everyday."

"Malone said that if this had been a black person arrested, nothing would be said about the arrest.

"As a matter of fact, if you arrest a black person you might get a pat on the back and a handshake," he said. "The reason I know is because for many years, and even within the last two years, blacks have been voicing their concern, but the chief and the city manager didn't want to hear their problems. During The Breaker Box incident, this officer was the arresting officer, but the city manager and chief of police saw no wrongdoing and refused to do anything to the officer. I believe that we should be fair in our dealings, especially when it involves people's livelihoods."

"This officer is being terminated because he arrested a white councilman. It is not about whether he violated policy, but the fact of him arresting this councilman the chief and city manager think he should have been fired because of that. As long as blacks were complaining, nothing ever did happen to this police officer. Remember over the years he increased in rank and he was Chief (Ron) Docimo's pick for the lieutenant position."

Malone said that he had to make a decision on whether or not Wood violated city personnel policy.

"Oftentimes, blacks experience situations where the employer does not adhere to its policy. Sometimes an employer might promote a white when the position should have been filled by a black," he said. "When things such as this happen, blacks raise all kinds of 'hell.' But if we are to be fair, even to those who fight us, we must think about and 'do unto others, as you want them to do unto you.'"

According to Malone, the embarrassment in this incident came from the chief of police and not the officer.

"As long as blacks were the alleged targets, this officer was a good cop," said Malone. "I have never forgotten about the many people I have talked to about their issues with this officer, but I feel that when the employee breaks a policy, some form of discipline should take place. When blacks are involved, this seems to fall upon deaf ears."

Malone said that the officer was protected and "they have even stated that if it were a black they would have never been firing him."

"In the last two years, it's obvious. As long as blacks complain, nothing is done," Malone said. "There seems to be deaf ears at city hall. I couldn't vote to support the termination because it wouldn't have been the right thing to do at this time. No matter how stupid the arrest was, in my opinion, there were no policies broken. My conclusion came to the fact that if this would have been a black officer and they are doing him like they are doing this white officer, what would the response be? I think we would rally to the black officer's rescue when he or she feels that they are wrongfully being targeted."

Malone said that he could have voted to satisfy popular demands, "but God would not have been pleased."

"Officer Wood is not the problem at the moment, it's the city manager and the police chief."

"We need a new direction in the police department as well as for city manager. Their performance has been poor," he said. "They have put the city into such a critical liability crunch in regards to the personnel matters. I am hoping the mayor will convene the council soon so we can discuss prudent matters in regards to the city manager and the police chief's performance."