IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MARVIN THOMPSON,          )
           )
       Petitioner,      )
           )
v.                        )      Civil Action No. 3:07cv915-ID
           )            (WO)
UNITED STATES OF AMERICA,  )
           )
       Respondent.     )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Petitioner Marvin Thompson ("Thompson"), a federal inmate proceeding *pro se*,

brings this action as a motion to vacate, set aside or correct his sentence pursuant to 28

U.S.C. § 2255.  Thompson challenges the revocation of his supervised release and makes

allegations of ineffective assistance of counsel.

**I.   PROCEDURAL BACKGROUND**

In January 1993, after pleading guilty to conspiracy to distribute cocaine base,

Thompson was sentenced to 137 months in prison, to be followed by five years of supervised

release.  Thompson was released from prison in 2001, and began serving his term of

supervised release.

In November 2005, the United States initiated proceedings for revocation of

Thompson's supervised release after he was arrested for violations of state law.  On April

4, 2006, following a revocation hearing, the district court revoked Thompson's supervised

release and imposed a 46-month term of custody.  Thompson appealed to the Eleventh Circuit, and on December 13, 2006, the appellate court affirmed the district court's judgment. *See United States v. Thompson*, 210 Fed.Appx. 857 (11th Cir. Dec. 13, 2006) (unpublished).

On October 8, 2007,[1] Thompson filed this motion under 28 U.S.C. § 2255 challenging the revocation of his supervised release.  Thompson asserts ineffective assistance of counsel based on his counsel's:  (1) failure to request a handwriting expert; (2) failure to present testimony from various witnesses at the revocation hearing; (3) failure to pursue reconstruction of a videotape recording of his arrest; (4) failure to object to the continuance of the revocation hearing; (5) failure to move to suppress the government's evidence; and (6) failure to move for discovery regarding the government's evidence.  In addition, Thompson claims that newly discovered evidence establishes that the evidence presented against him at the revocation hearing was fabricated.  Finally, Thompson claims that the district court erred by failing to allow his counsel an opportunity to object to its findings of fact, conclusions of law, and the manner in which its sentence was imposed.

The United States filed an answer in which it asserts that Thompson's claims are without merit and entitle him to no relief.  Thompson was afforded an opportunity to respond to the government's answer, and has done so.  After careful consideration of the § 2255

---

[1]Although the § 2255 motion was date-stamped "received" in this court on October 11, 2007, it was signed by Thompson on October 8, 2007.  Under the "mailbox rule," a *pro se* inmate's petition is deemed filed the date it is delivered to prison officials for mailing, presumptively the date it is signed by the petitioner. *Houston v. Lack,* 487 U.S. 266, 271-72 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999).  Under the circumstances, this court deems October 8, 2007, to be the filing date of Thompson's motion.

motion, the parties' submissions, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts,* the motion should be denied.

## II.   DISCUSSION

### A.   Ineffective Assistance of Counsel

In order to succeed on a claim of ineffective assistance of counsel, a petitioner must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under that test, the petitioner must first show that his counsel's performance was deficient because it "fell below an objective standard of reasonableness."  *Id*. at 688.  Second, he must show that counsel's deficient performance actually prejudiced his defense.  *Id.*  "There is a strong presumption that counsel's performance falls within the 'wide range of professional assistance,' [and] the defendant bears the burden of proving counsel's representation was unreasonable under prevailing professional norms and that the challenged actions was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).  The court must be mindful to "address not what is prudent or [even] appropriate, but only what is constitutionally compelled." *Burger v. Kemp*, 483 U.S. 776, 794 (1987).

### 1.   *Failure to Request Handwriting Expert*

Thompson contends that his counsel rendered ineffective assistance by failing to request the assistance of a handwriting expert to establish it was not his signature on a ticket

3

he allegedly received at the time of his arrest.  (Doc. No. 1 at p. 17 - *"Addendum # 1.a."*)

An issue at the revocation hearing was the question of whether Lt. Steven Woods of the Lanett, Alabama, Police Department issued Thompson a traffic ticket for illegally parking his car on the date he was arrested, November 17, 2005.  Lt. Woods testified that he initially noticed and approached Thompson's car because it was illegally parked.  When he neared the car, he said, he observed Thompson and another individual, Ernest Lyman, engaged in what he believed was a drug deal next to the car.  Lyman was arrested when a pat-down revealed a crack pipe in his possession.  When Lt. Woods instructed Thompson's girlfriend, Sylvia Banks, a passenger in Thompson's car, to exit the vehicle, Thompson repeatedly told her to remain in the car and stepped toward Lt. Woods.  Thompson was then placed under arrest for obstruction of a governmental operation.  An inventory search of Thompson's car revealed a small "fanny pack" in the driver's seat; discovered within the pack was crack cocaine and a nine-millimeter pistol.

At the revocation hearing, Thompson's counsel sought to impeach Lt. Woods's testimony by attempting to show that Lt. Woods had engaged in a pattern of pretextual and harassing traffic stops of Thompson and by suggesting that his reason for approaching Thompson on November 17, 2005, was not, as Lt. Woods testified, that Thompson was illegally parked.  To this effect, counsel suggested that Lt. Woods had not issued a traffic ticket to Thompson at the time of his arrest and that Thompson's signature may have been

4

forged on a ticket supposedly issued to him on that date.[2]  During his cross-examination, Lt. Woods acknowledged that Thompson's ticket number from the November 17 incident was out of sequential order from other tickets he had issued before and after the incident, and he had pulled Thompson over for traffic violations twice following the incident.

In an affidavit filed with this court, Thompson's counsel states that he made a tactical decision that it was unnecessary to employ a handwriting expert to question the authenticity of Thompson's signature on the November 17 ticket, because he believed his cross-examination of Lt. Woods sufficiently "impeached Lt. Woods's testimony concerning whether [Thompson] signed a ticket that he allegedly received at the time of his arrest." (Doc. No. 3 at p. 2 - *"Affidavit of Donnie W. Bethel."*)

This court cannot conclude that counsel's failure to obtain the assistance of a handwriting expert prejudiced Thompson in the least.  Thompson asks this court to assume that had the handwriting analysis been done it would have proven to be exculpatory, but he has offered nothing but his own protestations of innocence to support this allegation.  Thus, Thompson fails to demonstrate a "reasonable probability" that, but for counsel's allegedly deficient performance, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Moreover, it appears from the record that counsel took an appropriate approach to impeaching Lt. Woods by eliciting evidence suggesting that he was biased

---

[2]On direct examination, Thompson testified that Lt. Woods did not issue him a ticket on the date of his arrest and claimed that it was not his signature on a ticket presented into evidence by the government.

5

against Thompson and had made several traffic stops of Thompson that were, in the defense's theory, pretextual and harassing.   Again, "there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.   "Tactical decisions of counsel are entitled to broad deference." *Routly v. Singletary*, 33 F.3d 1279, 1287 (11th Cir. 1994).   Accordingly, Thompson is not entitled to any relief based on this allegation of ineffective assistance of counsel.

### 2.   *Failure to Present Testimony from Various Witnesses*

#### a.   Testimony from Sylvia Banks

Thompson contends that his counsel rendered ineffective assistance by failing to present testimony from Sylvia Banks, who was Thompson's girlfriend and a passenger in his car at the time of his November 17 arrest.   (Doc. No. 1 at p. 17 - *"Addendum # 1.b."*) According to Thompson, Banks would have testified that there was no bag on the driver's seat of his car and that Thompson "never advanced on Lt. Woods when [Lt. Woods] was speaking to [Banks], which formed the pretext for the Obstruction of Government Operation charge."[3]   (*Id*.)

Addressing this claim in his affidavit filed with the court, Thompson's counsel avers:

[M]y investigator and I interviewed [Banks] at length concerning her knowledge of this case.   First, contrary to Petitioner's assertion, Ms. Banks confirmed to us that there was indeed a black bag on Petitioner's car seat; therefore, her testimony on this matter would've been very damaging to Petitioner's case.   Further, my investigator and I both concluded beyond doubt

---

[3]An affidavit from Sylvia Banks, with averments to this effect, is attached to Thompson's § 2255 motion.   (Doc. No. 1, Attachment # 1 at pp. 1-5 - *"Sworn Affidavit of Sylvia Banks."*)

that Petitioner had instructed Ms. Banks to lie on his behalf and claim ownership of the gun found in the bag. I chose not to call her as a witness because I am not in the habit of suborning perjury.

(Doc. No. 3 at p. 2 - *"Affidavit of Donnie W. Bethel."*)

"[A] claim of ineffective assistance cannot be grounded on the failure of trial counsel to produce false or misleading evidence." *Card v. Dugger*, 911 F.2d 1494, 1503 (11th Cir. 1990). A defendant has no Sixth Amendment right to a counsel willing to participate in presenting perjured testimony. *See Nix v. Whiteside*, 475 U.S. 157, 173 (1986). "Although counsel must take all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law." *Id*. at 166. Here, counsel's decision not to present what he had reason to believe would be perjured testimony from Banks did not amount to ineffective assistance under *Strickland*, and Thompson is not entitled to any relief based on this claim.

b.    Testimony from Andreena Lynch

Thompson also asserts that his counsel was ineffective for failing to present testimony from Andreena Lynch, Sylvia Banks's daughter. (Doc. No. 1 at p. 17 - *"Addendum # 1.b."*) Thompson maintains that Lynch "would have testified to several discrepancies in Lt. Woods's account of the incident that would have impacted his credibility." (*Id*.)

An affidavit from Andreena Lynch is attached to Thompson's § 2255 motion. (Doc. No. 1, Attachment # 1 at pp. 6-7 - *"Sworn Affidavit of Andreena Lynch."*) In her affidavit, Lynch recounts certain events she says she witnessed at the November 17 arrest scene,

7

which, she states, took place near the residence she lives in with her mother, Sylvia Banks. However, Thompson fails to point to specific averments in Lynch's affidavit that are materially contradictory to Lt. Woods's testimony or that would, if believed, be reasonably likely to impact significantly upon Lt. Woods's credibility.

Addressing his failure to present testimony from Lynch, Thompson's counsel states:

As to Andreena Lynch, no one we interviewed during our investigation ever mentioned that she had any personal knowledge of the circumstances surrounding Petitioner's arrest, nor did Petitioner ever mention that Ms. Lynch possessed any such knowledge. The information that Ms. Lynch has attested to in her sworn affidavit was never brought to the attention of me or my investigator..

(Doc. No. 3 at p. 2 - *"Affidavit of Donnie W. Bethel."*)

Thompson points to no facts reasonably available to counsel at the time of the revocation hearing that might have suggested to counsel that testimony from Lynch would prove beneficial to Thompson's defense or that Lynch would indeed have provided testimony helpful to Thompson. Thompson does not allege that he ever informed counsel prior to the revocation hearing that Lynch could testify to any of the matters asserted by her in her affidavit. Nor is there any indication that Lynch herself, at the time of Thompson's revocation hearing, ever evidenced a willingness to provide exculpatory testimony on Thompson's behalf. Thus, Thompson has failed to demonstrate that his counsel's performance in this regard was professionally unreasonable. *Strickland*, 466 U.S. at 688.

Furthermore, Thompson fails to meet his burden of showing that the testimony of Lynch – whatever its value in impeaching Lt. Woods's credibility – was reasonably likely

8

to have changed the outcome of the proceeding.   Therefore, Thompson fails also to demonstrate the necessary prejudice required under *Strickland*.   Consequently, he is not entitled to any relief based on this claim.   *See Strickland*, 466 U.S. at 687-89.

> c.   Testimony from other witnesses

Thompson claims that his counsel was also ineffective for failing to present testimony from various other witnesses who, he says, were "essential to impeachment" of Lt. Woods's credibility.   (Doc. No. 1 at pp. 20-22 - *"Addendum # 4."*)   Among the other witnesses Thompson argues his counsel should have called to testify at the revocation hearing are:  (1) Barbara Thompson, who is Thompson's sister; (2) Tony Malone, a Lanett City Councilman and President of the Lanett chapter of the NAACP; (3) Officer Larry Clark and "Officer Cox," two of the Lanett police officers who participated in Thompson's arrest on November 17; and (4) Jim Ingram, an attorney who represented Thompson at the preliminary hearing for the state criminal proceedings arising from the November 17 arrest.   (*Id*.)

Thompson submits an affidavit from his sister, Barbara Thompson, in which she recounts arriving at the scene of Thompson's November 17 arrest after her brother had been handcuffed and placed in a police car; she states that Lt. Woods told her at that time that she could not talk to her brother and that neither she nor anyone else would be allowed to take her brother's car home.   (Doc. No. 1, Attachment # 1 at p. 8 - *"Sworn Affidavit of Barbara R. Thompson."*)   With regard to Councilman Malone, Thompson maintains that Malone could have testified to "numerous complaints and ongoing problems with regard to Lt.

Woods's professional conduct."  (Doc. No. 1 at p. 22.)   As for Officers Clark and Cox, Thompson suggests that the officers could have contradicted Lt. Woods's testimony that Thompson stepped toward Lt. Woods when telling Slyvia Banks not to cooperate with Lt. Woods's instructions to exit Thompson's car during the November 17 incident.  (*Id*. at pp. 20-21.)  Finally, with regard to attorney Jim Ingram, Thompson maintains that Ingram could have testified that Lt. Woods, under cross-examination at the state preliminary hearing, admitted that he did not write a ticket at the time of Thompson's November 17 arrest.  (*Id.* at 21.)

Addressing this claim in his affidavit, Thompson's counsel avers as follows:

As to the witnesses named in this [claim], I will address each one.  Barbara Thompson had no knowledge of the traffic stop or the bag found in Petitioner's car.  At no time did Petitioner ever express to me that he believed that we should call Ms. Thompson as a witness at the hearing.  Tony Malone had no knowledge of the traffic stop or the bag found in Petitioner's car.  Mr. Malone was the President of the Lanett, Alabama, chapter of the NAACP.  He told me that he had received several complaints from black citizens in Lanett complaining of racial profiling and harassment by Lt. Woods.  When I discussed subpoenaing Mr. Malone, he became hostile and stated that he would not testify voluntarily, as he was a businessman who had to do business in Lanett.  In light of Mr. Malone's hostility and reluctance to testify, and his lack of knowledge concerning the traffic stop or the bag found in Petitioner's car, I made a tactical decision not to call Mr. Malone as a witness.  I fully discussed this decision with Petitioner and he did not object to this strategy.  The testimony of Officers Clark and Cox would have supported and corroborated that of Lt. Woods, and nothing they would have testified to would have helped Petitioner's case.  At no time did Petitioner ever express to me that he believed that we should call Officer Clark or Officer Clark as a witness at the hearing.  Attorney James Ingram represented Petitioner at the preliminary hearing conducted in the state court.  Mr. Ingram initially told me that Lt. Wood admitted at that hearing that Lt. Wood did not issue Petitioner a ticket at the time of Petitioner's arrest.  However, I obtained and reviewed

10

a transcript of the preliminary hearing and discovered that the transcript reflected that Lt. Woods did not testify concerning the question of whether he issued Petitioner a ticket or not.  When I discussed this with Mr. Ingram, he did not dispute the accuracy or authenticity of the transcript, and admitted that he must have been mistaken concerning his memory of Lt. Woods's testimony at the preliminary hearing.  At that point, Mr. Ingram had no testimony of value to offer at the revocation hearing, which is why I did not ask him to attend the hearing after it had been continued.  I fully discussed this decision with Petitioner.

(Doc. No. 3 at pp. 4-5 - *"Affidavit of Donnie W. Bethel."*)

Once again, Thompson points to no facts reasonably available to his counsel at the time of the revocation hearing that might have suggested to counsel that testimony from any of these witnesses would prove beneficial to Thompson or that these witnesses indeed would have been willing to provide such testimony.  Thompson does not allege that he ever informed counsel prior to the revocation hearing that his sister could testify to any of the matters asserted by her in her affidavit, and there is no indication that Thompson's sister ever evidenced a willingness to provide exculpatory testimony on her brother's behalf.  Counsel's affidavit establishes that Councilman Minor – in light of his expressed reluctance to testify – was unlikely to provide testimony beneficial to Thompson.  Thompson's claim that Officers Clark and Cox would provide testimony that impeached Lt. Woods is based on nothing more than unsupported speculation by Thompson.  Finally, this court's review of the transcript of Thompson's state preliminary hearing fully supports the statements by Thompson's counsel in his affidavit that Lt. Woods did *not* testify at the state preliminary hearing concerning the question of whether he issued Thompson a ticket on the date of his

11

November 17 arrest.  Thus, Thompson's attorney in the state proceedings, Jim Ingram, could not have provided testimony at the revocation hearing to impeach Lt. Woods's testimony on this question.

For these reasons, Thompson has failed to demonstrate that his counsel's performance in this regard was professionally unreasonable.  *Strickland*, 466 U.S. at 688.  Moreover, because Thompson also fails to demonstrate that the testimony of the uncalled witnesses was reasonably likely to have changed the outcome of the revocation proceeding, he fails also to demonstrate the necessary prejudice required under *Strickland*.  Consequently, he is not entitled to any relief based on this claim of ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 687-89.

### 3.    *Failure to Pursue Reconstruction of Videotape Recording*

Thompson contends that his counsel was ineffective for "failing to pursue reconstruction of the videotape that was allegedly destroyed by the Government's witness, which would have confirmed my account of the events at the time of the arrest."  (Doc. No. 1 at p. 17 - *"Addendum # 1.c."*)

At the revocation hearing, Lt. Woods testified that the videotape recording device in his patrol car malfunctioned and that, therefore, the November 17 arrest of Thompson was not recorded.  Accordingly, there was nothing on a video that could be "reconstructed."  As such,  any efforts to "pursue reconstruction of the videotape" could not possibly have

benefitted Thompson's defense.[4]  Consequently, Thompson's claim of ineffective assistance of counsel in this regard fails to establish deficient performance or prejudice within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984).  He is not entitled to any relief based on this claim.

### 4.    *Failure to Object to Continuance*

Thompson contends that his counsel was ineffective for failing to object to the continuance of the revocation hearing on February 15, 2006, when, according to Thompson, a government witness failed to appear in court.  (Doc. No. 1 at p. 17 - *"Addendum # 1.d."*)

It is not clear from the record that the continuation of the revocation hearing on February 15, 2006, was at the request of the government, or that it stemmed from the failure of a government witness to appear.  The court's records reflect that the revocation hearing was initially scheduled for December 21, 2005.  (Criminal Case No. 3:92cr162 - Doc. No. 409.)  On that date, the defense made an oral motion to continue, which the court granted. (Criminal Case No. 3:92cr162 - Doc. No. 416.)  On December 23, 2005, the court entered an order resetting the revocation hearing for January 17, 2006.  (Criminal Case No. 3:92cr162 - Doc. No. 418.)  On January 11, 2006, on its own motion, the court reset the hearing date for January 26, 2006.  (Criminal Case No. 3:92cr162 - Doc. No. 426.) Thereafter, a second defense motion for continuance was filed, and the court granted the motion, resetting the hearing for February 15, 2006.  (Criminal Case No. 3:92cr162 - Doc.

---

[4]*See "Affidavit of Donnie W. Bethel"* (Doc. No. 3) at pp. 2-3.

Nos. 429 & 430.)  On February 14, 2006, the defense filed its third motion for continuance. (Criminal Case No. 3:92cr162 - Doc. No. 439.)  That motion was granted, and the revocation hearing was ultimately reset for April 4, 2006, on which date the hearing in fact took place. (Criminal Case No. 3:92cr162 - Doc. No. 440.)

The government argues (Doc. No. 6 at p. 10) that even if there is some mistake in the court's records and the request for a continuance of the February 15, 2006, hearing was made by the United States, and not the defense, Thompson has failed to show how his counsel's failure to object to the final continuance prejudiced him.  The undersigned agrees.  Not only do the court's records fail to establish that the continuance was, as Thompson claims, at the government's request, but the revocation hearing had been delayed for almost two months at the request of the defense by the time the February 15, 2006, hearing was continued. Thompson fails to establish deficient performance by his counsel or any prejudice in this regard. *Strickland v. Washington*, 466 U.S. 668 (1984).  Consequently, he is not entitled to any relief based on this claim of ineffective assistance.

### 5.   *Failure to Move to Suppress Evidence*

Thompson argues that his counsel rendered ineffective assistance by failing to move to suppress the government's evidence on the basis of improper search and seizure.  (Doc. No. 1 at p. 17 - *"Addendum # 1.e."*)

The Federal Rules of Evidence do not apply in supervised release revocation proceedings. *United States v. Frazier*, 26 F.3d 110, 113-14 (11th Cir. 1994).  Moreover, the

exclusionary rule does not apply to supervised release revocation hearings.  *Id*. at 114 (citing *United States v. Montez*, 952 F.2d 854, 858 (5th Cir. 1992); *United States v. Kindred*, 918 F.2d 485, 486 (5th Cir. 1990)).

> Addressing this issue in his affidavit, Thompson's counsel states:
>
> Petitioner and I had several discussions in which I addressed the issue of suppressing the fruits of the search of Petitioner's car.  I explained the differences between a trial and a revocation hearing.  I explained the standard of proof at a trial is proof beyond a reasonable doubt, while the standard of proof at a revocation hearing is a preponderance of the evidence.  I also explained that the Federal Rules of Evidence would apply at a trial, but that those Rules don't apply at an evidentiary hearing.  I further explained how this impacted the suppression of evidence: evidence that might be suppressed at a trial would be admissible at an evidentiary hearing.  Petitioner understood this.

(Doc. No. 3 at p. 3 - *"Affidavit of Donnie W. Bethel."*)

Thompson has no basis for arguing that his counsel rendered ineffective assistance by failing to move to suppress the government's evidence in a proceeding at which the exclusionary rule did not apply.  Consequently, he fails to establish deficient performance by his counsel or resulting prejudice.  *Strickland v. Washington*, 466 U.S. 668 (1984).  He is not entitled to any relief based on this claim.

### 6.      *Failure to Move for Discovery of Government's Evidence*

Thompson contends that his counsel was ineffective for failing "to move for discovery regarding the substance allegedly found in [Thompson's] vehicle and verification that the weapon allegedly found was in fact an actual firearm."  (Doc. No. 1 at p. 17 - *"Addendum # 1.f."*)

15

Addressing this claim, Thompson's counsel states:

> As to failing to move to have the alleged crack cocaine tested, this simply was immaterial to the strategy we employed at the hearing. We contended that the bag and its contents that were found in Petitioner's car did not belong to Petitioner. It would not have mattered at all if we could somehow have convinced the court that the substance in the bag was not crack, if the court still found that the gun belonged to Petitioner, because the Court would still have found that Petitioner violated the terms of his supervised release by possessing a firearm. In essence, the gun and the crack rose and fell together.

(Doc. No. 3 at pp. 3-4 - *"Affidavit of Donnie W. Bethel."*)

Again, "[t]actical decisions of counsel are entitled to broad deference." *Routly v. Singletary*, 33 F.3d 1279, 1287 (11th Cir. 1994). Moreover, Thompson asks this court to assume that analysis of the evidence found in his car would establish that the seized substance was not in fact crack cocaine and that the seized pistol was not in fact an actual firearm. He offers this court nothing to support such suppositions. Consequently, Thompson fails to demonstrate that his counsel's performance was deficient or that he was prejudiced by counsel's performance in this regard. *Strickland*, 466 U.S. at 688. As such, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

## B.    Newly Discovered Evidence

Thompson claims that newly discovered evidence establishes that the evidence presented against him at the revocation hearing was fabricated and was "the product of the worst sort of governmental abuse of a citizen's Constitutional rights." (Doc. No. 1 at p. 18 - *"Addendum # 2."*) In this regard, Thompson alleges that Lt. Woods planted the drugs and the firearm found in his car. (*Id.*) He asserts that sometime after the revocation hearing, Lt.

16

Woods "was investigated and terminated from the police force for abuse of his authority for retaliatory purposes" and that action against Lt. Woods supports his claim that Lt. Woods fabricated evidence against him.[5]  (*Id*.)

In his affidavit addressing the claims of ineffective assistance of counsel presented against him by Thompson, counsel for Thompson states that Thompson never suggested to him or anyone in his office (the Office of the Federal Defender) that Lt. Woods planted the "fanny pack" containing the drug and firearm evidence in his car and that, in his discussions of the case, Thompson never disputed that Lt. Woods found the fanny pack in his car.  (Doc. No. 3 at p. 4 - *"Affidavit of Donnie W. Bethel."*)  According to counsel, Thompson insisted to him and his investigator only that the fanny pack was not his and that it may have been left in his car by an unnamed man who used his car earlier in the day, by his daughter, or by his girlfriend Sylvia Banks.  (*Id*.)  Further, as noted earlier in this Recommendation, counsel also indicated in his affidavit that Sylvia Banks had confirmed to him and his investigator that there was indeed a black bag on Thompson's car seat; counsel also learned that Thompson had instructed Banks to lie on his behalf and claim ownership of the gun found in the bag. (*Id*. at p. 2.)  Finally, in his testimony at the revocation hearing, Thompson never disputed that there was a fanny pack in his car before he was approached by police on November 17.

This court finds that Lt. Woods's termination from the police force based on

---

[5]Thompson maintains that the termination of Lt. Woods "established proof that he was not credible and possessed a character capable of retaliation, racial profiling, and evidence planting in violation of policy and procedural methods regarding his arrest patrol."  (Doc. No. 1 at p. 16.)

apparently unrelated charges of abuse of authority is not a sufficient basis for overturning the results of Thompson's revocation proceeding.  The issue of Lt. Woods's credibility was thoroughly explored by Thompson's counsel during cross-examination and in his arguments to the district court.  Further, Thompson's after-the-fact claim that Lt. Woods planted evidence against him does not qualify as newly discovered evidence.  "A claim belatedly pursued is not newly discovered evidence." *United States v. Seago*, 930 F.2d 482, 490 (6th Cir. 1991) (citation omitted).  This court agrees with the government's contention that Thompson's claim of planted evidence is also barred because it could have been previously raised.  (*See* Doc. No. 6 at 12.)  To the extent that Thompson suggests that his counsel was ineffective for failing to pursue a "planted evidence" defense at the revocation hearing, Thompson's claim lacks merit.  Counsel's affidavit and other aspects of the record previously discussed reflect that counsel had no reasonable basis for pursuing such a defense at the time of the revocation hearing.  Thompson is not entitled to any relief based on this claim.

C.     **District Court's Failure to Allow Counsel Opportunity to Object to Findings of Fact, Conclusions of Law, and Sentence Imposed**

Thompson argues that the district court failed to elicit fully articulated objections to its findings of fact, conclusions of law, and the manner in which its sentence was imposed, as required by *United States v. Campbell*, 473 F.3d 1345 (11th Cir. 2007).  (Doc. No. 1 at p. 18 - *"Addendum # 3."*)

In *Campbell*, the Eleventh Circuit cited its holding in *United States v. Jones*, 899 F.2d 1097 (11th Cir. 1990), wherein the Court held that "the district courts [are] to elicit fully

articulated objections, following imposition of sentence, to the court's ultimate findings of fact and conclusions of law."  899 F.2d at 1102.  The Court in *Jones* further stated that the "district court should also elicit from counsel an articulation of the grounds on which the objection is based."  *Id*.  The objective in *Jones* was to "ensure ... that all objections are raised in the trial court and that the ground for each objection is clearly stated," which will "aid the district court in correcting any error, tell the appellate court precisely which objections have been preserved and which have been waived, and enable the appellate court to apply the proper standard of review to those preserved."  *Id*. at 1102-03.  In *Campbell*, the Eleventh Circuit held that the requirements of *Jones* must be followed by district courts in supervised release revocation proceedings.  *Campbell*, 473 F.3d at 348.

Thompson contends that the district court's failure to follow the *Campbell*/*Jones* requirements in his case resulted in:  (1) the court's failure to consider the advisory sentencing guidelines in imposing a sentence; (2) imposition of an unreasonable revocation sentence; and (3) his counsel's being unable to argue on his behalf for a lower sentence. (Doc. No. 1 at pp. 18-20 - *"Addendum # 3."*)

The record reflects that the district court made findings that Thompson was guilty of possessing a controlled substance and possessing a firearm, in violation of the terms of his supervised release.  (*Revocation Hearing* at p. 116.)  The court then revoked Thompson's supervised release and elicited input from the parties as to what sentence ought to be imposed.  (*Id*.)  It is clear from the court's subsequent statements that the court then

19

considered the applicable advisory guidelines sentencing range.  (*Id*. at pp. 117-19.)  After the Probation Office argued for a revocation sentence of 46 months – which was at the top end of the advisory guidelines range of from 37 to 46 months – Thompson's counsel argued that Thompson had made positive adjustments while on supervised release and that  persons committing acts far worse than Thompson's had received revocation sentences far lower than the sentence being recommended by the Probation Office in his case.  (*Id*. at 117.)  The district court then summarized the facts constituting Thompson's violations and characterized his violations as "very, very serious" offenses.  (*Id*. at 120.)  The 46-month sentence imposed by the district court was at the top end of the advisory guidelines range.

Although, after imposing sentence, the district court did not elicit objections from counsel, the record was sufficient to enable meaningful appellate review of the issues Thompson contends he was unable to present as a result of the court's failure to follow the *Campbell*/*Jones* requirements.  As indicated above, the district court made an on-the-record consideration of the advisory guidelines range in imposing sentence.  Furthermore, not only did counsel argue strenuously on Thompson's behalf during the hearing for a lower sentence, but counsel raised a reasonableness issue on direct appeal of the revocation proceeding.  The Eleventh Circuit found that the imposition of Thompson's sentence reflected the district court's consideration of several of the relevant factors under 18 U.S.C. § 3553(a) and that, consequently, Thompson's sentence was not unreasonable.[6]  *See United States v. Thompson*,

---

[6]On direct appeal of the revocation proceeding, Thompson also argued that (1) the
(continued...)

210 Fed.Appx. 857, 860 (11th Cir. Dec. 13, 2006) (unpublished).

Because Thompson has failed to demonstrate that the existence of a *Campbell*/*Jones* violation impacted the appellate court's review of any of his claims, he is not entitled to any relief on this ground. *See United States v. Cruz*, 946 F.2d 122, 124 n.1 (11th Cir. 1991) (a remand based on a violation of the requirements of *Jones* is unnecessary when the record on appeal is sufficient to enable review) (cited in *Campbell*, 473 F.3d at 1347).

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Thompson be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before January 29, 2009.**   A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections

---

[6](...continued)
government failed to prove by a preponderance of the evidence that he violated the conditions of his supervised release because (a) there was evidence that other people had opportunities to leave the contraband in his car without his knowledge; and (b) there was no evidence presented showing he had actual or constructive possession of the contraband; and (2) the district court failed to give adequate consideration to evidence showing that Lt. Woods's testimony was incredible and biased, as indicated by his testimony that he issued Thompson a ticket number out of sequence from his previous tickets, and evidence regarding Lt. Woods's harassment of Thompson via multiple traffic stops.  The Eleventh Circuit addressed the merits of these claims and decided them adversely to Thompson. *United States v. Thompson*, 210 Fed.Appx. 857, 860 (11th Cir. Dec. 13, 2006) (unpublished).

will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 16th day of January, 2009.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE